**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| JASON TRAHAN, Individually and For Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ROSEHILL RESOURCES, INC.,<br><br>Defendant. | **Case No. 4:20-cv-01928**<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

### ORIGINAL COLLECTIVE ACTION COMPLAINT

#### SUMMARY

1.      Jason Trahan (Trahan) brings this lawsuit to recover unpaid overtime wages and other damages from Rosehill Resources, Inc. (Rosehill) under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

2.      Trahan worked for Rosehill as a Safety Specialist.

3.      Trahan and the Day Rate Workers (defined below) regularly worked more than 40 hours a week.

4.      But Rosehill did not pay them overtime.

5.      Instead of paying overtime as required by the FLSA, Rosehill classified these workers as independent contractors and paid them a flat amount for each day worked (a "day rate") without overtime compensation.

6.      Trahan and the Day Rate Workers never received a guaranteed salary.

7.      This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

**JURISDICTION & VENUE**

8.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.      Venue is proper under 28 U.S.C. § 1391(b)(1) because Rosehill maintains its headquarters in this District and Division.

10.     Indeed, Rosehill maintains its headquarters in Houston, Texas.

**PARTIES**

11.     Trahan worked for Rosehill as a Safety Specialist from approximately June 2019 until November 2019.

12.     Throughout his employment, Rosehill classified Trahan as an independent contractor and paid him a flat daily rate for each day worked regardless of the total hours worked in a work week ("day rate pay plan").

13.     But Trahan was actually Rosehill's employee.

14.     Trahan's consent to be a party plaintiff is attached as Exhibit 1.

15.     Trahan brings a FLSA collective action on behalf of himself and all other Rosehill's Day Rate Workers who were paid according to Rosehill's day rate pay plan.

16.     Rosehill paid each of these workers a flat amount for each day worked and failed to pay them overtime for hours worked in excess of 40 in a workweek.

17.     The collective of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All workers who worked for, or on behalf of, Rosehill that Rosehill paid according to its day rate pay plan at any time in the last 3 years (the "Day Rate Workers").**

18.     The Day Rate Workers can be readily ascertained from Rosehill's records.

19.     Rosehill may be served with process by serving its registered agent: **CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201**.

## FLSA COVERAGE

20.     At all relevant times, Rosehill has been an employer within the meaning of section 3(d) of the FLSA. 29 U.S.C. § 203(d).

21.     At all relevant times, Rosehill has been part of an enterprise within the meaning of section 3(r) of the FLSA. 29 U.S.C. § 203(r).

22.     At all relevant times, Rosehill has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

23.     At all relevant times, Rosehill has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, flashlights, smart phones/devices, badges, uniforms, computers, personal protection equipment, etc.) that have been moved in or produced for commerce.

24.     In each of the past 3 years, Rosehill's annual gross volume of sales has exceeded $1,000,000 for at least the past 3 years.

25.     At all relevant times, Trahan and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

26.     Rosehill uniformly applied its policy of paying it's the Day Rat Workers, including Trahan, a day rate with no overtime compensation.

27.     Rosehill applied this policy regardless of any alleged individualized factors such as job position, job duties/responsibilities, or geographic location.

28.     By paying Trahan and the Day Rate Workers a day rate with no overtime compensation, Rosehill violated (and continues to violate) the FLSA's requirement that it pay employees at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

29.     As a result of Rosehill's day rate pay plan, Trahan and the Day Rate Workers do not receive overtime as required by the FLSA.

30.     Rosehill's day rate pay plan is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

31.     Rosehill's misclassification of Trahan and the Day Rate Workers as independent contractors does not alter their status as an employee for purposes of the FLSA.

## FACTUAL ALLEGATIONS

32.     Rosehill "is an independent oil and natural gas company focused on growing production and reserves in the core of the Delaware Basin, through drilling and bolt-on acquisitions."[1]

33.     To complete its business objectives, Rosehill hires personnel, such as Trahan, to perform oilfield services at its drill sites.

34.     Rosehill does not hire these workers on a project-by-project basis.

35.     Rather, Rosehill hires and treats these workers just like regular, even if sometimes short-term, employees

36.     Many of these individuals worked for Rosehill on a day rate basis (without overtime pay).

37.     These workers make up the proposed collective of Day Rate Workers.

38.     While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

39.     For example, Trahan worked for Rosehill as a Safety Specialist from approximately June 2019 until November 2019.

---

[1] https://www.rosehillresources.com/about (last visited May 29, 2020).

40.     Throughout Trahan's employment with Rosehill, Rosehill paid him on a day rate basis.

41.     Trahan and the Day Rate Workers work for Rosehill under its day rate pay plan.

42.     Trahan and the Day Rate Workers do not receive a salary as required to be exempt under the FLSA.

43.     If Trahan and the Day Rate Workers did not work, they did not get paid.

44.     Trahan and the Day Rate Workers do not receive overtime pay.

45.     This is despite the fact Trahan and the Day Rate Workers often work for at least 12 hours a day every day for two weeks at a time.

46.     Although Trahan and the Day Rate Workers typically worked at least 12 hours a day every day for two weeks at a time, they did not receive any overtime pay.

47.     Trahan and the Day Rate Workers received the day rate regardless of the number of hours they worked in a week, even when they worked more than 40 hours.

48.     Trahan's work schedule is typical of the Day Rate Workers.

49.     Rosehill knows Trahan and the Day Rate Workers work for at least 12 hours a day every day for two weeks at a time.

50.     Rosehill's records reflect the fact that Trahan and the Day Rate Workers regularly work far in excess of 40 hours in certain workweeks.

51.     Rosehill does not pay Trahan or the Day Rate Workers overtime for hours worked in excess of 40 in any of those weeks.

52.     Instead, Rosehill pays Trahan and the Day Rate Workers on a day rate basis.

53.     Trahan and the Day Rate Workers are not employed on a salary basis.

54.     Trahan and the Day Rate Workers do not, and have never, received guaranteed weekly compensation from Rosehill irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

55.     Rosehill's policy of paying Trahan and the Day Rate Workers a day rate with no overtime compensation violates the FLSA because it deprives Trahan and the Day Rate Workers of overtime for the hours they work in excess of 40 hours in a single workweek.

56.     Rosehill knew Trahan and the Day Rate Workers worked more than 40 hours in a week.

57.     Rosehill controls Trahan and the Day Rate Workers' work.

58.     Rosehill requires Trahan and the Day Rate Workers to follow Rosehill's policies and procedures.

59.     Trahan and the Day Rate Workers' work must adhere to the quality standards put in place by Rosehill.

60.     Trahan and the Day Rate Workers are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

61.     As a Safety Specialist, Trahan was responsible for ensuring Rosehill's jobsites comply with Rosehill, OSHA, and API rules and regulations.

62.     All of the Day Rate Workers perform similar duties, ensuring drilling projects are safely completed according to the established guidelines, specification, and restrictions set by Rosehill.

63.     This requires the use of their hands, requires them to wear personal protective equipment, and is physically exhausting.

64.     Trahan and the Day Rate Workers perform manual labor out in the elements.

65.     Without the job performed by Trahan and the Day Rate Workers, Rosehill would not be able to complete its business objectives.

66.     Trahan and the Day Rate Workers relied on Rosehill for work and compensation.

67.     Trahan and the Day Rate Workers worked in accordance with the schedule set by Rosehill.

68.     Trahan and the Day Rate Workers cannot subcontract out the work they are assigned by Rosehill.

69.     Trahan and the Day Rate Workers did not substantially invest in the tools required to complete the overall job to which they were assigned.

70.     Trahan and the Day Rate Workers did not market their services while employed by Rosehill.

71.     Trahan and the Day Rate Workers worked exclusively for Rosehill during the relevant period.

72.     Trahan and the Day Rate Workers did not incur operating expenses like rent, payroll, marketing, and/or insurance.

73.     Rosehill set Trahan and the Day Rate Workers' work schedule, which prohibited them from working other jobs for other companies while working on jobs for Rosehill.

74.     At all relevant times, Rosehill maintained control, oversight, and direction of Trahan and the Day Rate Workers, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

75.     Rosehill knew, or showed reckless disregard for whether, the Day Rate Workers were entitled to overtime under the FLSA.

76.     Nonetheless, Rosehill failed to pay Trahan and the Day Rate Workers overtime.

77.     Rosehill knowingly, willfully, or in reckless disregard carried out this illegal day rate pay plan that deprived Trahan and the Day Rate Workers of overtime compensation in violation of the FLSA.

78.     Rosehill's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay these employees overtime made in good faith.

79.     Rosehill willfully violated the FLSA.

### CAUSE OF ACTION
### FLSA VIOLATION

80.     Rosehill's day rate pay plan violates the FLSA because Trahan and the other Day Rate

Workers did not receive overtime pay for hours they worked in excess of 40 in a week.

81.     Rosehill knew, or showed reckless disregard for whether, its day rate pay plan violated the

FLSA.

82.     Rosehill's failure to pay overtime compensation to the Day Rate Workers was not based

on any reasonable interpretation of the law.

83.     Nor was Rosehill's decision not to pay its Day Rate Workers overtime made in good faith.

84.     Accordingly, Trahan and the Day Rate Workers are entitled to recover their unpaid

overtime under the FLSA, liquidated damages, attorneys' fees, and costs.

### COLLECTIVE ACTION ALLEGATIONS

85.     Trahan brings this claim as a collective action under the FLSA.

86.     The Day Rate Workers were victimized by Rosehill's day rate pay plan which is in willful

violation of the FLSA.

87.     Other Day Rate Workers worked with Trahan and indicated they were paid in the same

manner (a day rate with no overtime) and performed similar work.

88.     Based on his experiences with Rosehill, Trahan is aware that Rosehill's illegal day rate pay

plan was imposed on the Day Rate Workers.

89.     The Day Rate Workers are similarly situated in all relevant respects.

90.     Even if their precise job duties might vary somewhat, these differences do not matter for

the purposes of determining their entitlement to overtime.

91.     The illegal day rate pay plan Rosehill imposed on Trahan was imposed on all Day Rate

Workers.

92.     Like Trahan, the other Day Rate Workers are denied overtime when they work more than 40 hours per week.

93.     The overtime owed to Trahan and the Day Rate Workers will be calculated using the same records and the same formula.

94.     Trahan's experiences are therefore typical of the experiences of the Day Rate Workers.

95.     The specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

96.     Trahan has no interest contrary to, or in conflict with, the Day Rate Workers that would prevent collective treatment.

97.     Like all Day Rate Workers, Trahan has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

98.     A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

99.     Absent a collective action, many Day Rate Workers will not obtain redress of their injuries, and Rosehill will reap the unjust benefits of violating the FLSA.

100.    Further, even if some of the Day Rate Workers could afford individual litigation against Rosehill, it would be unduly burdensome to the judicial system.

101.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Day Rate Workers, as well as provide judicial consistency.

102.    The questions of law and fact that are common to each Day Rate Worker predominate over any questions affecting solely the individual members.

103.    Among the common questions of law and fact are:

      a.     Whether Rosehill employed the Day Rate Workers within the meaning of the applicable state and federal statutes, including the FLSA;

b.      Whether Rosehill's decision to pay a day rate with no overtime compensation to these workers was made in good faith;

c.      Whether Rosehill's violation of the FLSA was willful; and

d.      Whether Rosehill's illegal pay practice applied to the Day Rate Workers.

104.    Trahan and the Day Rate Workers sustained damages arising out of Rosehill's illegal and uniform employment policy.

105.    Trahan knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

106.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Rosehill's records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

107.    Consistent with Rosehill's illegal day rate policy, Trahan and the Day Rate Workers were not paid overtime when they worked more than 40 hours in a workweek.

108.    As part of their regular business practices, Rosehill intentionally, willfully, and repeatedly applied its day rate pay plan to Trahan and the Day Rate Workers.

109.    Rosehill's illegal day rate pay plan deprived Trahan and the Day Rate Workers of the premium overtime wages they are owed under federal law.

110.    Rosehill is aware, or should have been aware, that the FLSA required it to pay Trahan and the Day Rate Workers overtime premiums for hours worked in excess of 40 in a workweek.

111.    There are many similarly situated Day Rate Workers who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

112.    The other Day Rate Workers are known to Rosehill, are readily identifiable, and can be located through Rosehill's records.

## JURY DEMAND

Trahan demands a trial by jury.

## RELIEF SOUGHT

Wherefore, Trahan prays for:

(a)     an order allowing Trahan's FLSA claims to proceed as a collective action and directing notice to the other Day Rate Workers pursuant to § 216(b) of the FLSA;

(b)     judgment finding Rosehill in violation of the FLSA;

(c)     judgment finding Rosehill liable to Trahan and the Day Rate Workers for unpaid overtime, and an equal amount of liquidated damages;

(d)     judgment awarding Trahan and the Day Rate Workers reasonable attorneys' fees and costs of this action;

(e)     judgment awarding Trahan and the Day Rate Workers pre- and post-judgment interest at the highest rates allowed by law; and

(f)     such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ *Michael A. Josephson*

**Michael A. Josephson**
Texas Bar No. 24014780
Federal ID No. 27157
**Andrew W. Dunlap**
Texas Bar No. 24078444
Federal ID No. 1093163
**Taylor A. Jones**
Texas Bar No. 24107823
Federal ID No. 3348814
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
tjones@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
Federal ID No. 21615
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**